COURT OF APPEALS OF VIRGINIA

Present:  Judges Frank, Kelsey and Powell
Argued at Chesapeake, Virginia

TREMON BRIAN JOYCE

v.      Record No. 1397-09-1

OPINION BY
JUDGE D. ARTHUR KELSEY
AUGUST 10, 2010

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Karen J. Burrell, Judge

Robert H. Knight, III, Assistant Public Defender (J. Barry
McCracken, Assistant Public Defender; Office of the Public
Defender, on brief), for appellant.

Alice T. Armstrong, Assistant Attorney General II (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.

The trial court found Tremon Brian Joyce guilty of possession of heroin with intent to

distribute, third or subsequent offense, in violation of Code § 18.2-248(C).  On appeal, Joyce

contends the trial court erred by denying his pretrial motion to suppress, admitting into evidence

a prior conviction order and a report obtained from the Virginia Criminal Information Network

(VCIN), and finding the evidence proved his prior convictions.  In our opinion, the trial court did

not err in any of these respects.  We thus affirm Joyce's conviction.

I.

When reviewing a denial of a suppression motion, we view the evidence "in the light

most favorable to the Commonwealth, giving it the benefit of any reasonable inferences."  Glenn

v. Commonwealth, 49 Va. App. 413, 416, 642 S.E.2d 282, 283 (2007) (*en banc*) (citation

omitted), aff'd, 275 Va. 123, 654 S.E.2d 910 (2008).  We apply the same standard when

reviewing a challenge to the sufficiency of the evidence.  See Commonwealth v. Hudson, 265

Va. 505, 514, 578 S.E.2d 781, 786 (2003).  This principle requires us to "discard the evidence of

the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (emphasis and citation omitted).

## II.

In February 2008, Norfolk police conducted surveillance in the 600 block of Liberty Street, an area of the city with a notorious reputation for being "infested with narcotics." Based on the officers' prior experience, they set up a surveillance post opposite a Shop 'N Go convenience store. As one officer explained, "there's always drug activity going on at the side of the Shop 'N Go." The officer had made about thirty narcotics arrests in the general area, many involving firearms. For this reason, the management of the store posted no trespassing signs on the side of the building. The store management also filed a letter with the police department requesting enforcement of its trespassing ban.

During the surveillance, the officer observed Joyce walk up to the side of the Shop 'N Go convenience store. The officer testified:

> Q: Specifically with regard to the side of the building that you saw the defendant standing on, was there a no-trespassing sign at that location?
>
> A: He was *standing right under a no-trespassing sign*, yes.
>
> Q: You said standing right under. Approximately how far away was the no-trespassing sign from the defendant?
>
> A: Where he was standing, *it was actually above him*. Posted above him was a white sign with red letters that said: "No trespassing."

(Emphasis added.) Joyce did not go in or out of the store. Nor did he attempt to do so. There were no doors at the side of the store and, thus, no reason for any customer to loiter there. Shortly after Joyce's arrival, the officer watched another male approach Joyce. After the two

men conducted a hand-to-hand transaction, they left the convenience store traveling in opposite directions.

Having witnessed Joyce trespassing, and suspecting him of also making a drug transaction, the officer pulled up next to Joyce as he rode his bicycle away from the convenience store. "Hey, can I talk to you for a second," the officer asked. "Yes," Joyce replied. The officer asked him what he was doing at the side of the convenience store. Joyce answered, "just buying blunts." Joyce could not, however, provide a receipt for the purchase. The officer asked for Joyce's consent to search him for weapons. Joyce agreed. As the officer began the search, Joyce twice pulled his hand out of the officer's grasp and reached toward his waistband. Fearing Joyce was reaching for a weapon, the officer searched Joyce's crotch area and discovered instead a bag containing fifty-seven capsules of suspected heroin packaged in five or six bundles. The officer placed Joyce under arrest for trespassing. The Commonwealth later indicted Joyce for possession of heroin with intent to distribute, third or subsequent offense.

Prior to trial, Joyce filed a motion to suppress seeking to exclude from evidence the recovered heroin. Joyce claimed the officer did not have probable cause to arrest him for trespassing or to search him incident to that arrest. Without addressing whether the search was consensual, the trial court denied the motion holding the circumstances provided probable cause for the officer to arrest Joyce for trespassing at the side of the convenience store. Thus, the search incident to that arrest (albeit immediately preceding it) was entirely valid.

At trial, the Commonwealth offered two orders into evidence showing Joyce had twice been convicted of possession of cocaine with intent to distribute. Joyce objected to one of the orders, a Norfolk Circuit Court order from 1992, claiming it was irrelevant because it did not identify him as the defendant. In reply, the Commonwealth sought to introduce a VCIN report proving the defendant named in the 1992 order was one of Joyce's many aliases. Joyce objected

claiming the VCIN report should be excluded as hearsay. The trial court sustained the objection "at this time."

Later in the trial, a Norfolk police investigator testified about the use of VCIN reports by law enforcement and explained they were routinely and regularly relied upon by police officers. Citing Frye v. Commonwealth, 231 Va. 370, 345 S.E.2d 267 (1986), the Commonwealth again sought to introduce the VCIN report into evidence for the limited purpose of proving the name of the defendant on the 1992 conviction order matched an alias Joyce had previously used. Joyce again objected. The trial court overruled the objection and admitted the VCIN report for the purpose offered.

Sitting as factfinder, the trial court found the evidence proved Joyce possessed heroin with intent to distribute. On appeal, Joyce argues the court erred by denying his pretrial motion to suppress, admitting into evidence his prior convictions and a VCIN report, and finding the evidence proved his prior convictions.

III.

A. SEARCH INCIDENT TO ARREST FOR TRESPASSING

Though the ultimate question whether an officer violated the Fourth Amendment triggers *de novo* appellate scrutiny, "we defer to the trial court's findings of 'historical fact' and give 'due weight to the inferences drawn from those facts by resident judges and local law enforcement officers.'" Slayton v. Commonwealth, 41 Va. App. 101, 105, 582 S.E.2d 448, 449-50 (2003) (citation omitted); see also Malbrough v. Commonwealth, 275 Va. 163, 169, 655 S.E.2d 1, 3 (2008) (recognizing that this standard requires us to "give due weight to inferences drawn from those facts by resident judges and local law enforcement officers" (citation omitted)). In addition, when affirming a suppression decision, we "consider facts presented both at the

suppression hearing and at trial." Testa v. Commonwealth, 55 Va. App. 275, 279, 685 S.E.2d 213, 215 (2009) (citation omitted).

Under the Fourth Amendment, "[w]hen officers have probable cause to believe that a person has committed a crime in their presence, the Fourth Amendment permits them to make an arrest, and to search the suspect in order to safeguard evidence and ensure their own safety." Virginia v. Moore, 553 U.S. 164, 178 (2008), rev'g, 272 Va. 717, 636 S.E.2d 395 (2006). Consequently, the "standards traditionally governing a search incident to lawful arrest are not, therefore, commuted to the stricter Terry standards by the absence of probable fruits or further evidence of the particular crime for which the arrest is made." United States v. Robinson, 414 U.S. 218, 234 (1973). Because a legally justifiable arrest is itself a "reasonable intrusion under the Fourth Amendment," it follows that "a search incident to the arrest requires no additional justification." Id. at 235.

In addition, when "the formal arrest follow[s] quickly on the heels of the challenged search," it is not "particularly important that the search preceded the arrest rather than vice versa," Rawlings v. Kentucky, 448 U.S. 98, 111 (1980), "so long as probable cause existed at the time of the search," Slayton, 41 Va. App. at 108, 582 S.E.2d at 451. A constitutionally permissible search incident to arrest "may be conducted by an officer *either before or after* the arrest." Italiano v. Commonwealth, 214 Va. 334, 336, 200 S.E.2d 526, 528 (1973) (emphasis in original). It does not matter whether the search occurs "at the moment the arresting officer takes the suspect into custody or when he announces that the suspect is under arrest." Id. at 337, 200 S.E.2d at 528 (citation omitted).

> When the probable cause for an arrest exists independently of what the search produces, the fact that the search precedes the formal arrest is immaterial when the search and arrest are nearly simultaneous and constitute for all practical purposes but one transaction. To hold differently would be to allow a technical

- 5 -

> formality of time to control when there has been no real interference with the substantive rights of a defendant.

Id. at 337, 200 S.E.2d at 528-29 (citation omitted); see also Brown v. Commonwealth, 270 Va. 414, 418 n.1, 620 S.E.2d 760, 762 n.1 (2005) (finding it inconsequential that the officer searched the suspect "before officially arresting him").

In this case, we need not address whether the officer had reasonable grounds to believe Joyce was armed and dangerous for purposes of a Terry frisk if — as the trial court found — the officer had probable cause to arrest Joyce for trespassing prior to his search. "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." Atwater v. Lago Vista, 532 U.S. 318, 354 (2001). The power to arrest is invariably coupled with the power to search incident to arrest. Moore, 553 U.S. at 178. We thus turn to the question whether the officer had probable cause to arrest Joyce for trespassing.

As the United States Supreme Court has recently emphasized, the "very phrase 'probable cause' confirms that the Fourth Amendment does not demand all possible precision." Herring v. United States, 129 S. Ct. 695, 699 (2009). We thus employ a "common sense approach" not a "hypertechnical, rigid, and legalistic analysis" when reviewing probable cause determinations. Derr v. Commonwealth, 242 Va. 413, 421, 410 S.E.2d 662, 666 (1991). The standard is not calibrated to "deal with hard certainties, but with probabilities." Slayton, 41 Va. App. at 106, 582 S.E.2d at 450 (citation omitted). Nor does it "demand any showing that such a belief be correct or more likely true than false." Id. (quoting Texas v. Brown, 460 U.S. 730, 742 (1983) (plurality)).[1]

---

[1] See United States v. Humphries, 372 F.3d 653, 660 (4th Cir. 2004); United States v. Jones, 31 F.3d 1304, 1313 (4th Cir. 1994).

"Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the probable-cause decision." Maryland v. Pringle, 540 U.S. 366, 371 (2003) (citation and internal brackets omitted). Not even a "prima facie showing" of criminality is required. Illinois v. Gates, 462 U.S. 213, 235 (1983) (citation omitted).[2] Instead, probable cause "requires only a probability or substantial chance of criminal activity, *not an actual showing of such activity*." Id. at 243 n.13 (emphasis added). "The Constitution does not guarantee that only the guilty will be arrested." Baker v. McCollan, 443 U.S. 137, 145 (1979). As we explained in Slayton:

> "The substance of all the definitions of probable cause is a reasonable ground for belief of guilt. And this means less than evidence which would justify condemnation or conviction." Brinegar v. United States, 338 U.S. 160, 175 (1949) (citations and internal quotation marks omitted).
>
> In other words, even though probable cause means more than a "mere suspicion," it is not necessary for the facts to be "sufficient to convict" the accused of the offense. Gomez, 296 F.3d at 262 (quoting Taylor v. Waters, 81 F.3d 429, 434 (4th Cir. 1996)). Unlike a factfinder at trial, "reasonable law officers need not 'resolve every doubt about a suspect's guilt before probable cause is established.'" Id. (quoting Torchinsky v. Siwinski, 942 F.2d 257, 260 (4th Cir. 1991)).

Slayton, 41 Va. App. at 107, 582 S.E.2d at 451.

Consistent with these principles, the trial court correctly held the factual circumstances of this case justified the arresting officer's belief that Joyce was trespassing at the side of the convenience store. "Code § 18.2-119 criminalizes trespass by those who go on the property of another 'without authority of law' after 'having been forbidden to do so' by a lawful possessor." Raab v. Commonwealth, 50 Va. App. 577, 582, 652 S.E.2d 144, 147 (2007) (*en banc*). The

---

[2] See also Saunders v. Commonwealth, 218 Va. 294, 300-01, 237 S.E.2d 150, 155 (1977); Westcott v. Commonwealth, 216 Va. 123, 126, 216 S.E.2d 60, 63 (1975); Manley v. Commonwealth, 211 Va. 146, 151, 176 S.E.2d 309, 313 (1970); Quigley v. Commonwealth, 14 Va. App. 28, 34, 414 S.E.2d 851, 855 (1992).

warning can be by "a sign or signs" posted by the lawful possessor.  Code § 18.2-119.  Joyce

loitered at the side of the convenience store in an area clearly marked "no trespassing."  There

were no doors on that side of the store.  While the officer saw Joyce approach the side of the

convenience store from a parallel street, he never observed Joyce attempt to enter or exit the

store.  Nor did Joyce's actions suggest he intended to do so.  Joyce had no legitimate reason for

entering the no-trespassing area and engaging in a suspicious hand-to-hand transaction with

another trespasser certainly did not give him one.

The convenience store expressly requested the police department to enforce the store's

no-trespassing policy, no doubt to discourage exactly what Joyce was doing.  To be sure, the

store could do little more to protect its interests than what it did — post a no-trespassing sign and

request police enforcement.  By arresting Joyce, the police officer was simply doing what he was

sent there to do — enforce the no-trespassing statute against loiterers who have no legitimate

business on the convenience store's property.  The trial court, therefore, did not err when it

denied Joyce's motion to suppress.[3]

## B.  ADMISSION OF 1992 CONVICTION & VCIN REPORT

Joyce contends the trial court erred by admitting into evidence the 1992 order because it

convicted a defendant named "Lamont Joyce" with a birth date of October 9, 1971.  Joyce does

not affirmatively claim he is not the individual listed on the conviction and sentencing order.

Instead, he argues the Commonwealth failed to prove he used this name as an alias.  Thus, he

concludes, the 1992 order was both irrelevant and immaterial and should not have been admitted

---

[3] The parties did not brief, and we do not address, whether the search was consensual. See generally Ellis v. Commonwealth, 52 Va. App. 220, 226, 662 S.E.2d 640, 643 (2008) ("Our analysis begins with the general rule that 'a search authorized by consent is wholly valid.'" (quoting Kyer v. Commonwealth, 45 Va. App. 473, 483, 612 S.E.2d 213, 218 (2005) (en banc))).

into evidence for purposes of establishing the second predicate offense for the recidivism provision of Code § 18.2-248(C).

We agree with Joyce's logic but not his conclusion. The 1992 order would be irrelevant absent evidence that it convicted Joyce, not someone else with a similar name. The trial court, however, admitted into evidence a VCIN report on Joyce that specifically stated he used "Lamont Joyce" as an alias. The VCIN report also indicated multiple birth dates and social security numbers Joyce had previously used. Joyce concedes on appeal the VCIN report — if admissible — would establish an evidentiary link between the 1992 order and him. Oral Argument at 11:19. He nonetheless contends the VCIN report is inadmissible because the Commonwealth failed to lay a satisfactory foundation for admitting it as a business record under Frye v. Commonwealth, 231 Va. 370, 345 S.E.2d 267 (1986). We disagree.

In Frye, a defendant found guilty of capital murder argued that the admission of a report from the National Crime Information Center (NCIC) violated the hearsay rule. See Cooper v. Commonwealth, 54 Va. App. 558, 567-68, 680 S.E.2d 361, 365-66 (2009) (summarizing Frye analysis). The NCIC report stated "Frye was wanted for escape from a West Virginia correctional facility," a fact relevant to the murder charge. Id. at 567, 680 S.E.2d at 365-66. There was no dispute that an official acting within his authority made the report entry. Id. at 567, 680 S.E.2d at 366. A West Virginia prison official testified that an escape warrant had been filed with the NCIC, thus generating the statement in an NCIC report identifying the defendant as an escapee. Id. The trial court admitted the NCIC report into evidence. Id.

Applying the "business records exception" to the hearsay rule, the Virginia Supreme Court affirmed. Id. This exception, Frye acknowledged, "generally limits admission of such evidence to facts or events within the personal knowledge and observation of the recording

official." Id. (internal brackets omitted). In Frye, however, there was no evidence the prison

official had personal knowledge that the defendant escaped from the West Virginia prison. As

we emphasized in Cooper, 54 Va. App. at 567-68, 680 S.E.2d at 366, Frye nevertheless pointed

out that the personal knowledge limitation must sometimes yield to practical necessity:

> In certain cases, where verification of the recorded facts is not
> possible through the personal knowledge of the record keeper,
> *practical necessity nevertheless requires admission of recorded*
> *evidence which has a circumstantial guarantee of trustworthiness*;
> this guarantee is provided where evidence shows the regularity of
> the preparation of the records and reliance on them by their
> preparers or those for whom they are prepared.

Frye, 231 Va. at 387, 345 S.E.2d at 279-80 (emphasis added) (citations omitted).

The next sentence of Frye held: "The NCIC printout, *therefore*, also comes within the

exception." Id. at 387, 345 S.E.2d at 280 (emphasis added). That conclusion, Frye added, was

particularly true given the fact that "records of the NCIC are routinely used and relied on by the

Virginia State Police in the regular course of business." Id. Thus, the foundation requirement

for Frye does not require personal knowledge of the record keeper. It is enough that the

circumstances demonstrate trustworthiness by showing "the regularity of the preparation of the

records and reliance on them by . . . those for whom they are prepared." Id. at 387, 345 S.E.2d at

280.

Whether an adequate foundation has been laid for a hearsay exception involves an

exercise of discretion by the trial court. See, e.g., Abney v. Commonwealth, 51 Va. App. 337,

347, 657 S.E.2d 796, 801 (2008).[4] We do not review foundation issues *de novo* but rather under

the deferential abuse-of-discretion standard of review. See generally Essex v. Commonwealth,

---

[4] This principle tracks the general rule that "the admissibility of evidence is within the discretion of the trial court and we will not reject the decision of the trial court unless we find an abuse of discretion." Midkiff v. Commonwealth, 280 Va. 216, 219, 694 S.E.2d 576, ___(2010). This is particularly true with respect to an appellate "challenge to the reliability of the evidence." Id.

228 Va. 273, 285, 322 S.E.2d 216, 223 (1984) ("Whether the foundation is sufficient is a question within the sound discretion of the trial judge."). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." Grattan v. Commonwealth, 278 Va. 602, 620, 685 S.E.2d 634, 644 (2009) (quoting in parenthetical Thomas v. Commonwealth, 44 Va. App. 741, 753, 607 S.E.2d 738, 743 (2005)).

In this case, the trial court did not abuse its discretion by finding an adequate foundation existed for the admission of the VCIN report just as it did for the admission of the NCIC report in Frye. The police investigator testified he used VCIN reports "every day" in the performance of his duties as a police officer. Officers routinely use these reports, he added, for running warrant checks, investigating drivers' licenses, and retrieving the criminal histories of arrestees.

The police investigator's testimony exactly parallels the statutory scheme governing VCIN reports. Information regarding convictions in Virginia must be electronically reported to the Central Criminal Records Exchange (CCRE), a section of the Virginia Department of State Police. See generally Code §§ 19.2-387 to 19.2-392.02. By statute, an "[e]lectronic report" to the CCRE must include among other things "the name of the person convicted and all aliases" which he is known to have used. Code § 19.2-390. The Virginia Criminal Information Network (VCIN) provides the electronic network of "information systems," Code § 19.2-390(B), for state and local criminal justice agencies to obtain arrest and conviction information maintained by the CCRE. See Code §§ 52-12 to 52-15, 19.2-389(A)(1). It necessarily follows that VCIN reports, like NCIC reports, "are routinely used and relied on by the Virginia State Police in the regular course of business." Frye, 231 Va. at 387, 345 S.E.2d at 280.

## C.  SUFFICIENCY OF THE EVIDENCE

We review a trial court's factfinding "with the highest degree of appellate deference." Thomas v. Commonwealth, 48 Va. App. 605, 608, 633 S.E.2d 229, 231 (2006). An appellate

court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Williams v. Commonwealth, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009) (emphasis in original) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)).[5] "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (citation omitted and emphasis in original).

In a bench trial, a trial judge's "major role is the determination of fact, and with experience in fulfilling that role comes expertise." Haskins v. Commonwealth, 44 Va. App. 1, 11, 602 S.E.2d 402, 407 (2004) (citation omitted). "If reasonable jurists could disagree about the probative force of the facts, we have no authority to substitute our views for those of the trial judge." Campbell v. Commonwealth, 39 Va. App. 180, 186, 571 S.E.2d 906, 909 (2002). This deferential standard "applies not only to the historical facts themselves, but the inferences from those facts as well." Clanton v. Commonwealth, 53 Va. App. 561, 566, 673 S.E.2d 904, 907 (2009) (*en banc*) (citation omitted). Thus, a factfinder may "draw reasonable inferences from basic facts to ultimate facts," Haskins, 44 Va. App. at 10, 602 S.E.2d at 406 (citations omitted), unless doing so would push "into the realm of *non sequitur*," Thomas, 48 Va. App. at 608, 633 S.E.2d at 231 (citation omitted).

In this case, Joyce challenges the sufficiency of the evidence supporting his conviction for possession of heroin, third or subsequent offense, in violation of Code § 18.2-248(C). The second offense, triggering the recidivism penalty for the instant offense, was the 1992 conviction. Even with the admission of the VCIN report, Joyce argues, the trial court had insufficient evidence to conclude the 1992 order identified him. We disagree.

---

[5] See also Prieto v. Commonwealth, 278 Va. 366, 399, 682 S.E.2d 910, 927 (2009); McMillan v. Commonwealth, 277 Va. 11, 19, 671 S.E.2d 396, 399 (2009); Jones v.

The 1992 order, entered by Norfolk Circuit Court on February 25, 1992, convicted and sentenced "Lamont Joyce" of possession of cocaine with intent to distribute (as well as illegal possession of a firearm and, ironically, use of an assumed false name). It identifies the date of offense (abbreviated "DOO") as September 27, 1991.

The VCIN report identifies one of Joyce's alias names as "Lamont Joyce" and lists a host of different birth dates and social security numbers. The VCIN report indicates Joyce was convicted and sentenced by the Norfolk Circuit Court on February 25, 1992, for possession of cocaine with intent to distribute, with an offense date of September 27, 1991.

The VCIN report also identifies *another* order, entered by the Norfolk Circuit Court on June 10, 2005, finding Joyce guilty of a drug offense with an offense date of March 5, 2004. This matches exactly the 2005 conviction and sentencing order admitted into evidence (without objection by Joyce) that irrefutably identified Joyce.

Both the 1992 and 2005 orders identified on the VCIN verified Joyce's identity by fingerprint matches. The VCIN report attests: "All arrest entries contained in this record are based on fingerprint comparison and pertain to the same individual."

Given the credible corroboration of the VCIN report and Joyce's criminal record, the trial court had ample evidence to conclude the 1992 order identified Joyce. His assertion to the contrary would have required the trial court to believe someone other than Joyce, by pure happenstance, was also convicted of the same drug charge on the same day in the same court using an alias also used by Joyce.[6] The trial court did not err by rejecting this hypothesis of

---

Commonwealth, 277 Va. 171, 182, 670 S.E.2d 727, 734 (2009); Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008).

[6] Joyce makes much over the fact that the alias birth date (October 9, 1971) and what he now claims to be his actual birth date (October 8, 1970) are dissimilar. Like the trial court, we find this discrepancy relevant but not dispositive. The VCIN report indicates Joyce has used eight different aliases, three different birth dates, and three different social security numbers.

- 13 -

innocence.  Due process requires the prosecution to prove Joyce's guilt "beyond a reasonable doubt."  Fiore v. White, 531 U.S. 225, 228-29 (2001).  This essential safeguard of liberty, as stringent as it is, does not ignore the axiom that "[e]vidence is seldom sufficient to establish any fact as demonstrated and beyond all doubt."  Harris v. Commonwealth, 206 Va. 882, 887, 147 S.E.2d 88, 92 (1966) (quoting Toler v. Commonwealth, 188 Va. 774, 780, 51 S.E.2d 210, 213 (1949)).  "Anything is possible," as Judge Posner has observed, "but a merely metaphysical doubt . . . is not a reasonable doubt for purposes of the criminal law.  If it were, no one could be convicted."  United States v. Ytem, 255 F.3d 394, 397 (7th Cir. 2001) (internal citations omitted).

IV.

Finding no error in the trial court's evidentiary decisions or any irrationality in its factfinding, we affirm Joyce's conviction of possession of heroin with intent to distribute, third or subsequent offense, in violation of Code § 18.2-248(C).

Affirmed.