COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Beales, Decker and AtLee
Argued by teleconference


COMMONWEALTH OF VIRGINIA

             MEMORANDUM OPINION[*] BY
v.  Record No. 1394-15-2     JUDGE MARLA GRAFF DECKER
               JANUARY 26, 2016

DERRELL RENARD BROWN


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Clarence N. Jenkins, Jr., Judge

Victoria Johnson, Assistant Attorney General (Mark R. Herring,
Attorney General, on briefs), for appellant.

Christopher M. Bradshaw (Bradshaw & O'Connor, P.C., on brief),
for appellee.


Derrell Renard Brown (the defendant) was indicted for possession of a firearm by a

convicted violent felon in violation of Code § 18.2-308.2. Pursuant to Code §§ 19.2-398 and -400,

the Commonwealth appeals a pretrial ruling granting the defendant's motion to suppress evidence,

including a firearm, that was recovered in the course of an encounter between the defendant and law

enforcement. The Commonwealth contends that the discovery of the firearm was reasonable under

the Fourth Amendment to the United States Constitution because the officers had probable cause to

arrest the defendant for trespassing at the time of the seizure. The record, viewed under the

appropriate legal standard, supports the conclusion that the circuit court erred because the totality of

the circumstances provided the officers with probable cause to arrest the defendant for trespass and

to search him incident to that arrest. Consequently, we reverse the circuit court's ruling suppressing

the evidence and remand the case for further proceedings consistent with this opinion.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND[1]

After dark on April 6, 2014, City of Richmond Police Officers Paul Gaines and Robert Langston were working in uniform in an off-duty capacity at a private apartment complex. The apartment complex had been employing off-duty police officers to help enforce trespassing laws on the premises since 2001. During April of 2014 in particular, crime was "common" in the apartment complex, which was having problems not only with trespassing but also with illegal drugs, shootings, aggravated assaults, and domestic violence. The officers were specifically tasked with enforcing trespassing restrictions and dealing with drug violations.

The apartment complex was surrounded by a fence and had only two entrances. The rental office, which was located between the two entrances, bore a no-trespassing sign. Additionally, the property was marked throughout with no-trespassing signs.[2] While the officers were patrolling near the middle of the complex, they saw the defendant, who was walking alone, as he passed between two buildings. The area was "[d]ecent[ly] lit," and each of the buildings was posted with a no-trespassing sign. One sign read, "No trespassing. Violators will be prosecuted." The second sign was also a no-trespassing sign. Neither sign included the language "no guests or visitors allowed."

---

[1] On review of a ruling on a motion to suppress, this Court views the evidence in the light most favorable to the party who prevailed below, in this case the defendant. See, e.g., Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). This Court is "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them" and "give[s] due weight to the inferences drawn from those facts" by the trial judge and law enforcement. McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*).

[2] Officer Langston testified that the complex's policy was that an individual who did not reside there, in order to come upon the property without trespassing, had to be in the company of a leaseholder. He further said that every lease agreement notified tenants of the policy. The circuit court expressed some doubt regarding the existence of such a policy. Viewing the evidence under the proper standard, we proceed as if the apartment complex did not have such a policy. Therefore, we need not consider what impact, if any, such a policy might have had on the assessment of probable cause to arrest the defendant for trespass.

The defendant had his head down and appeared to be talking on a cell phone. Officer Langston asked the defendant if they could speak with him. In response, the defendant stopped walking, but he "wasn't making any eye contact." Langston asked the defendant if he had any identification. He replied that he did not. He also admitted that he did not live on the property. According to the officer's recollection, the defendant told him that he had come to visit "either . . . his sister or his girl." Langston asked the defendant where she lived. The defendant "didn't have an exact address" and responded, "Around there." The officers made no additional effort to try to identify the person that the defendant said he was visiting in order to determine whether such a person was a tenant at the apartment complex.

Officer Langston noticed during the encounter that the defendant "seemed very nervous" in that his hands and arms were "shaking a little bit." Langston asked the defendant if he had any weapons in his possession. The defendant said he did not. Officer Langston, however, decided to pat him down for safety. The officers then found and seized a firearm that had been concealed in the defendant's waistband. The defendant also made some incriminating statements. Langston arrested the defendant, who was ultimately charged with possession of a firearm after conviction of a violent felony. He was not charged with trespassing.

Prior to trial, the defendant moved to suppress the evidence obtained as a result of the search. He argued that the officers had neither probable cause to arrest nor reasonable, articulable suspicion to believe that he was armed and dangerous as required to conduct a pat down of his person. The prosecutor argued that the officers had probable cause to arrest and search the defendant because prominently displayed signs forbade trespassing and the defendant admitted he was not a resident of the apartment complex.

The circuit court reasoned that the signs were inadequate to provide probable cause to arrest the defendant for trespass because they did not instruct non-residents that they lacked authorization

- 3 -

to "come on the property to visit someone." The court also noted that the officers did not investigate the defendant's claim that he was present to visit a resident. Finally, the judge concluded that although the officers may have had reasonable suspicion to believe that the defendant was trespassing, they lacked the reasonable, articulable suspicion to believe he was armed and dangerous that was necessary to conduct a weapons frisk. Accordingly, the court granted the defendant's motion to suppress.

## II. ANALYSIS

On appeal of an order granting a defendant's motion to suppress, the Commonwealth has the burden to show that the ruling constituted reversible error. See Murphy v. Commonwealth, 264 Va. 568, 573, 570 S.E.2d 836, 838 (2002). Whether a warrantless seizure violated the Fourth Amendment presents a mixed question of law and fact. Jones v. Commonwealth, 279 Va. 521, 527, 690 S.E.2d 95, 99 (2010). This Court gives deference to the trial court's factual findings. Id. Additionally, the trial court is not required to make explicit findings of fact. See Fitzgerald v. Commonwealth, 223 Va. 615, 627, 292 S.E.2d 798, 805 (1982). If it does not, the Court views the evidence in the light most favorable to the prevailing party, here the defendant, granting to the evidence all reasonable inferences fairly deducible therefrom. See Satchell v. Commonwealth, 20 Va. App. 641, 648, 460 S.E.2d 253, 256 (1995) (*en banc*). However, we review *de novo* legal issues such as whether a particular set of facts provided probable cause for a search or seizure. See Brooks v. Commonwealth, 282 Va. 90, 94-95, 712 S.E.2d 464, 466 (2011); Commonwealth v. Benjamin, 28 Va. App. 548, 552-53, 507 S.E.2d 113, 115 (1998).

The Commonwealth argues that the circuit court erroneously concluded that the totality of the circumstances did not provide the officers with probable cause to arrest the defendant for trespassing. The relevant facts are not in dispute. Applying the proper standard of review to these facts, we hold that the circuit court erred in granting the motion to suppress because the evidence

provided the officers with probable cause to arrest the defendant for trespassing. Therefore, we reverse the circuit court's ruling.

Code § 18.2-119 provides in relevant part:

> If any person without authority of law goes upon or remains upon the lands, buildings or premises of another . . . after having been forbidden to do so by a sign or signs posted by or at the direction of [the owner, lessee, custodian,] or the agent of any such person . . . at a place or places where it or they may be reasonably seen, . . . he shall be guilty of a Class 1 misdemeanor.

A conviction for violating Code § 18.2-119 also requires proof that the trespass was willful. Reed v. Commonwealth, 6 Va. App. 65, 70-71, 366 S.E.2d 274, 278 (1988). Conversely, a "good faith belief that one has a right to be on the premises" negates a finding of criminal intent. Id. at 71, 366 S.E.2d at 278. "[A] bona fide claim of right is a sincere, although perhaps mistaken, good faith belief that one has some legal right to be on the property . . . [that] rise[s] [at least] to the level of authorization." Id.

Here, however, the issue is not whether the evidence proved trespass beyond a reasonable doubt in order to support a conviction or whether the defendant presented a viable defense to such a charge. Instead, the issue is whether the evidence met the lower standard of probable cause. See Whitaker v. Commonwealth, 279 Va. 268, 278, 687 S.E.2d 733, 738 (2010); Joyce v. Commonwealth, 56 Va. App. 646, 659-60, 696 S.E.2d 237, 243 (2010). Probable cause "exists when the facts and circumstances within the officer's knowledge . . . are sufficient to warrant a person of reasonable caution to believe that an offense has been or is being committed." Parker v. Commonwealth, 255 Va. 96, 106, 496 S.E.2d 47, 53 (1998) (quoting Taylor v. Commonwealth, 222 Va. 816, 820, 284 S.E.2d 833, 836 (1981)). The standard "relates to probabilities that are based upon the factual and practical considerations in everyday life as perceived by reasonable and prudent persons." Barnes v. Commonwealth, 279 Va. 22, 34, 688 S.E.2d 210, 216 (2010) (quoting Parker, 255 Va. at 106, 496 S.E.2d at 53). In assessing whether the facts establish probable cause,

courts "focus upon 'what the totality of the circumstances meant to police officers trained in analyzing the observed conduct for purposes of crime control.'" Id. (quoting Parker, 255 Va. at 106, 496 S.E.2d at 53). Whether particular facts establish this quantum of proof must be determined on a case-by-case basis. See Keeter v. Commonwealth, 222 Va. 134, 141, 278 S.E.2d 841, 846 (1981).

Although probable cause "means more than a 'mere suspicion,'" it "does [not] 'demand any showing that such a belief be correct or more likely true than false.'" Joyce, 56 Va. App. at 659-60, 696 S.E.2d at 243 (quoting Slayton v. Commonwealth, 41 Va. App. 101, 106, 107, 582 S.E.2d 448, 450, 451 (2003)). It does not require "even a 'prima facie showing' of criminality." Id. at 659, 696 S.E.2d at 243 (quoting Illinois v. Gates, 462 U.S. 213, 235 (1983)). Additionally, although probable cause must be based on "articulable" facts, the officer need not articulate those facts expressly or subjectively rely on them as the basis for his actions. See, e.g., Raab v. Commonwealth, 50 Va. App. 577, 583 n.2, 652 S.E.2d 144, 148 n.2 (2007) (*en banc*). Rather, the record must establish the existence of objective facts proving probable cause. Id.; see Whren v. United States, 517 U.S. 806, 812-13 (1996).

Finally, the existence of probable cause to arrest permits a search incident to arrest. See, e.g., Joyce, 56 Va. App. at 657, 696 S.E.2d at 242. It does not matter that "the formal arrest follow[s] quickly on the heels" of the search as long as probable cause to arrest existed at the time of the search. Id. (alteration in original) (quoting Rawlings v. Kentucky, 448 U.S. 98, 111 (1980)). Additionally, because the constitutional standard is one of objective rather than subjective reasonableness, it is irrelevant whether the accused is prosecuted for the offense that provided probable cause for the arrest. See, e.g., Slayton, 41 Va. App. at 108-09, 582 S.E.2d at 451-52. Therefore, if the officers had probable cause to arrest the defendant for trespassing, the seizure of

his person was reasonable under the Fourth Amendment, and the circuit court's suppression of his firearm and incriminating statements was error.

Certain undisputed evidence is key to our holding. The property was posted with no-trespassing signs that did not list any exceptions to that prohibition. Cf. United States v. Bellamy, 592 F. Supp. 2d 308, 311-12 (E.D.N.Y. 2009) (involving a sign stating both "No Trespassing" *and* "Tenants *and their Guests* ONLY" (emphasis added)); Commonwealth v. Fields, 104 S.W.3d 255, 257 (Ky. 2006) (involving property specifically marked "'No Trespassing, Congregating or Loitering'" *and* "for residents *and guests* only" (emphasis added)). Further, the area where the defendant was stopped was "[d]ecent[ly] lit." The defendant does not argue that it was unreasonable for the police to conclude that he was on notice of the no-trespassing policy conveyed by the signs. Additionally, the private apartment complex had been having significant problems with trespassing, drugs, and violence, and management had hired off-duty police officers to patrol the area in order to enforce the strict no-trespassing policy. See Powell v. Commonwealth, 57 Va. App. 329, 337, 701 S.E.2d 831, 834 (2010) (recognizing that an officer's knowledge that an area is known for its high crime rate is a factor that may be considered in assessing probable cause); Welshman v. Commonwealth, 28 Va. App. 20, 32, 502 S.E.2d 122, 128 (1998) (*en banc*) (noting that "'presence in a high crime area' is a factor that may be considered in determining whether an investigatory stop is appropriate" (quoting Brown v. Commonwealth, 15 Va. App. 232, 234 n.1, 421 S.E.2d 911, 912 n.1 (1992))).

The defendant, who admitted he did not live in the apartment complex, was alone while walking through the property after dark, and he avoided making eye contact with the uniformed officers during the encounter. Although he said he was present to visit his girlfriend or sister, he did not provide her name or address to the officers. He merely gestured in the direction where he said she lived. Finally, in addition to failing to make eye contact with the officers, the defendant's hands

and arms shook during the encounter. Officer Langston, a trained law enforcement officer, concluded based on the shaking that the defendant was "very nervous," another factor for consideration in determining whether the officers had probable cause to believe that the defendant was trespassing. See Buhrman v. Commonwealth, 275 Va. 501, 507, 659 S.E.2d 325, 328 (2008) (stating that "nervous behavior in the presence of law enforcement officers" may contribute to an assessment of probable cause (citing United States v. Mendenhall, 446 U.S. 544, 563-64 (1980))); see also Barnes, 279 Va. at 34, 688 S.E.2d at 216 (noting that courts consider what "the circumstances meant to police officers trained in analyzing the observed conduct for purposes of crime control" (quoting Parker, 255 Va. at 106, 496 S.E.2d at 53)).

The knowledge possessed by the officers on the facts of this case—viewed in light of their duty to safeguard the property and its residents in the face of significant problems on the premises with trespassing, drugs, and violence—provided sufficient objective facts to establish probable cause to believe that the defendant was violating the no-trespassing signs. The defendant admitted that he did not live at the apartment complex, and the signs themselves provided no exceptions under which non-residents were permitted on the property. Additionally, he was alone in the complex after dark, was nervous during his encounter with the police, and failed to provide a specific name or address for the tenant he claimed to be visiting. Therefore, the information available to the officers, viewed *objectively*, provided them with probable cause to believe that the defendant lacked authorization to be on the premises. See generally Reed, 6 Va. App. at 70-71, 366

S.E.2d at 278 (addressing the elements of and defenses to the crime of trespass).[3] That the defendant may have been able to present a good-faith claim-of-right defense to trespass at a trial, thereby avoiding a finding of guilt beyond a reasonable doubt, does not prevent us from concluding that the facts known to the officers, viewed objectively, were sufficient to meet the lower standard of probable cause to arrest for that offense. See, e.g., Whitaker, 279 Va. at 278, 687 S.E.2d at 738 (contrasting these standards). Finally, because the circumstances provided probable cause to arrest the defendant for trespass, the circuit court's ruling that the officers lacked reasonable suspicion to believe that the defendant was armed and dangerous simply is not dispositive. See Joyce, 56 Va. App. at 655-56, 658, 660, 696 S.E.2d at 241, 242-43, 244 (upholding a search where officers lacked reasonable suspicion for a weapons frisk but had probable cause to arrest for trespass).

## III. CONCLUSION

We hold as a matter of law that the evidence, viewed under the proper standard, established that the officers had probable cause to arrest the defendant for trespassing. Consequently, we

---

[3] The defendant relies upon the unpublished decision in Woodhouse v. Commonwealth, No. 1707-00-2, 2001 Va. App. LEXIS 630 (Va. Ct. App. Nov. 13, 2001). See Rule 5A:1(f) (providing that unpublished decisions are not "binding authority"). The decision in Woodhouse, however, is both factually and legally distinguishable. First, the decision provides no indication either that the residence at issue was located in an area known for a high rate of trespassing or other crime, or that the suspect showed signs of nervousness during the encounter. See 2001 Va. App. LEXIS 630, at *2-3. In the defendant's case, by contrast, his encounter with police occurred in an area known for its high rate of trespassing, drug dealing, and violence. Further, the defendant displayed signs of nervousness during the encounter that included the shaking of his arms and hands and a reluctance to make eye contact with the officers. Additionally, the cases upon which Woodhouse relies are distinguishable. See id. at *6 (citing Harris v. Commonwealth, 262 Va. 407, 551 S.E.2d 606 (2001); Ewell v. Commonwealth, 254 Va. 214, 491 S.E.2d 721 (1997)). In both Harris and Ewell, the officers did not know whether the appellants were residents of the premises at issue. See Harris, 262 Va. at 410, 417, 551 S.E.2d at 607, 611; Ewell, 254 Va. at 216, 491 S.E.2d at 722. In the defendant's case, by contrast, he admitted to the officers that he did not live at the apartment complex.

- 9 -

reverse the circuit court's ruling granting the defendant's motion to suppress the evidence obtained

as a result of his seizure, and we remand for further proceedings consistent with this opinion.

<u>Reversed and remanded.</u>