COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Huff, Malveaux and Chaney
Argued by videoconference


JEFFREY EARL FITZGERALD

v.     Record No. 0331-23-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE MARY BENNETT MALVEAUX
JANUARY 23, 2024


FROM THE CIRCUIT COURT OF BOTETOURT COUNTY
Joel R. Branscom, Judge

Melvin E. Williams (Meghan A. Strickler; Williams & Strickler,
PLC, on brief), for appellant.

Rachel A. Glines, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Jeffrey Earl Fitzgerald ("appellant") appeals his conviction in a bench trial for driving under

the influence of alcohol, in violation of Code § 18.2-266. He argues that police lacked probable

cause to arrest him, the trial court erred in relying upon the results of a retrograde extrapolation test,

and the evidence was insufficient to support his conviction. For the following reasons, we affirm.

## I. BACKGROUND

"On appeal, we review the evidence in the 'light most favorable' to the Commonwealth, the

prevailing party in the trial court." *Myers v. Commonwealth*, 299 Va. 671, 674 (2021) (quoting

*Vasquez v. Commonwealth*, 291 Va. 232, 236 (2016)). "Further, we 'discard the evidence of the

accused in conflict with that of the Commonwealth, and regard as true all the credible evidence

favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Barnett v.*

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

*Commonwealth*, 73 Va. App. 111, 115 (2021) (quoting *Yerling v. Commonwealth*, 71 Va. App. 527, 530 (2020)).

On February 24, 2021, Trooper Boyette of the Virginia State Police arrived at the scene of a three-vehicle crash. The accident had occurred at about 6:00 p.m., when appellant turned left on a flashing yellow light and caused a collision with two other vehicles that were traveling through an intersection. Boyette testified that the nature of the accident required him to "get[] vehicles out of the road," ensure that multiple injured parties were transported from the scene, and "get[] the roadways open . . . [and] the necessary personnel there." Three of the injured parties had to be "cut[] . . . out of the[ir] vehicle" by emergency personnel before they could be taken to the hospital.

When Boyette first encountered appellant, Boyette was wearing a mask and did not notice any odor of alcohol.[1] He did, however, ask appellant if he had consumed any alcohol, and appellant denied having done so. But sometime later, when Boyette removed his mask and interviewed appellant a second time, he smelled the odor of an alcoholic beverage coming from appellant and saw that appellant's eyes were "somewhat glassy." Boyette asked appellant a second time whether he had consumed any alcohol, and appellant admitted drinking nine ounces of beer earlier that day at approximately 3:00 p.m. Appellant denied drinking any alcohol after the crash.

Boyette then conducted field sobriety tests with appellant. When performing the walk-and-turn test, appellant could not place his feet into the proper starting position, swayed, and lost his balance several times. During the one-legged-stand test, appellant lost his balance

---

[1] Boyette testified that because the accident occurred "during the covid time," he initially "ha[d] a mask up."

after 11 seconds and failed to complete the test. A police video recording of appellant's field sobriety tests was played at trial and entered into evidence.

Following the field sobriety tests, appellant consented to take a preliminary breath test. His result indicated a blood alcohol concentration ("BAC") of 0.06.[2] Boyette arrested appellant for driving under the influence. At the jail, appellant provided an Intoxilyzer breath sample at 9:41 p.m. that indicated a BAC of 0.05 grams per 210 liters of breath.

Dr. Trista Wright, an expert forensic toxicologist with the Virginia Department of Forensic Science, testified at trial. She conducted a retrograde extrapolation of appellant's BAC at the time of the collision, based on the premise that appellant consumed no alcohol after the crash and had a BAC of 0.05 grams per 210 liters of breath at 9:41 p.m. Wright used a standard elimination rate to conclude and opine that at the time of the crash, appellant had a BAC of between 0.085 and 0.12. Wright agreed that her analysis was incompatible with appellant's claim that he had only consumed nine ounces of beer at about 3:00 p.m., because that amount of alcohol would have resulted in a significantly lower BAC by 9:41 p.m.

Appellant objected that Boyette had lacked probable cause to arrest him. The trial court overruled the objection, stating, "I think a positive [preliminary breath] test, admission of drinking and some of the field [sobriety] tests are sufficient for probable cause."

At the close of the Commonwealth's case-in-chief, appellant presented a combined argument on a motion to strike and renewed motion to strike, and in closing. He contended that under Code § 18.2-269, his BAC of 0.05 grams per 210 liters of breath created a presumption that he was not under the influence of alcohol at the time of the collision. Appellant also argued

_____

[2] The preliminary breath test result was introduced at trial solely for the purpose of evaluating probable cause to arrest. *See Stacy v. Commonwealth*, 22 Va. App. 417, 421-22 (1996) (permitting admission of a preliminary breath test result to evaluate probable cause under Code § 18.2-267).

that Wright had failed to state that her expert opinion was made to a "reasonable degree" of certainty and that her reverse extrapolation of BAC was insufficiently reliable. Further, appellant contended, there was otherwise insufficient evidence in Boyette's investigation to prove that appellant had been driving under the influence. Accordingly, appellant argued, there was "no evidence that his intoxication caused the accident. The accident could have been caused just as easily by his inattention, misgauging, misestimating, the ability to go through the intersection."[3]

In convicting appellant, the trial court acknowledged that appellant's 0.05 BAC result at 9:41 p.m. created a rebuttable presumption against intoxication at the time of the accident. *See* Code § 18.2-269(A)(1). It found, however, that the Commonwealth had rebutted this presumption through both Wright's testimony and the other evidence before it. After discussing appellant's possible BAC range at the time of the accident, including Wright's opinion about appellant's retrograde extrapolated BAC, the court stated

> [b]ut then I look at the field [sobriety] tests . . . and the definition of what under the influence means and that means having enough alcohol to affect your ability to move, talk, those type of things. . . . [T]he heel to toe test to me and what I saw on the, the screen, is somebody who . . . had enough alcohol in his system to affect his motor skills. . . . [D]oes he have enough in his system? I know he's got alcohol in his system. . . . [A]nd now I know he's staggering some when he's just doing a simple [heel] to toe test. So I do find the evidence sufficient beyond a reasonable doubt to find him guilty of driving under the influence.

This appeal followed.

---

[3] In its opening statement, the Commonwealth represented that appellant had caused the accident when he turned left and "str[uck] a vehicle." Counsel for appellant then acknowledged in his opening statement that "the Commonwealth has more or less accurately described the facts of how this accident occurred."

- 4 -

## II. ANALYSIS

### A. Probable Cause

Appellant argues that Boyette lacked probable cause to arrest him for driving under the influence. We disagree.

"The question of whether a . . . seizure violated the Fourth Amendment is 'a mixed question of law and fact that we review *de novo*' on appeal." *Hairston v. Commonwealth*, 67 Va. App. 552, 560 (2017) (quoting *Harris v. Commonwealth*, 276 Va. 689, 694 (2008)). "An appellate court independently reviews the trial court's application of relevant legal principles such as whether . . . probable cause supported a seizure. In doing so, however, the Court is 'bound by the trial court's factual findings unless those findings are plainly wrong or unsupported by the evidence.'" *Id.* at 560-61 (citation omitted) (quoting *Malbrough v. Commonwealth*, 275 Va. 163, 168 (2008)). Additionally, "we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." *Id.* at 561 (quoting *McGee v. Commonwealth*, 25 Va. App. 193, 198 (1997) (en banc)).

"[P]robable cause to arrest exists where the 'facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person . . . in believing, in the circumstances shown, that the suspect *has committed*, is committing, or is about to commit an offense.'" *Id.* at 564 (second and third alterations in original) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). "Probable cause has been defined as 'a fluid concept,' that 'deals with probabilities and depends on the totality of the circumstances.'" *Keene v. Commonwealth*, 74 Va. App. 547, 555 (2022) (first quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983); and then quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)). Accordingly, "[t]here is no formula for determining probable cause; it is a 'flexible, common-sense standard.'" *Id.* (quoting *Slayton v. Commonwealth*, 41 Va. App. 101, 106 (2003)). "Finely tuned standards such as proof beyond a

reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the [probable-cause] decision." *Doscoli v. Commonwealth*, 66 Va. App. 419, 427 (2016) (alteration in original) (quoting *Pringle*, 540 U.S. at 371). "Therefore, '[u]nlike a factfinder at trial, "reasonable law officers need not resolve every doubt about a suspect's guilt before probable cause is established."'" *Id.* (quoting *Joyce v. Commonwealth*, 56 Va. App. 646, 660 (2010)). Probable cause is judged by "examin[ing] the events leading up to the arrest[] and then decid[ing] 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *District of Columbia v. Wesby*, 583 U.S. 48, 56-57 (2018) (quoting *Pringle*, 540 U.S. at 371); *see also Mason v. Commonwealth*, 291 Va. 362, 369 (2016) (noting that although probable cause must be based on "[a]rticulable" facts, the officer need not articulate those facts expressly or subjectively rely on them as the basis for his actions).

Through his investigation, Boyette established that appellant was at fault in a substantial vehicle collision that produced multiple serious injuries. Although Boyette did not initially notice any odor of alcohol, once he removed his mask, he smelled an odor of an alcoholic beverage coming from appellant and noted that appellant had glassy eyes. When Boyette first asked appellant if he had consumed any alcohol that day, appellant stated that he had not, but later admitted having consumed nine ounces of beer that afternoon. On field sobriety tests, appellant failed to place his feet in the proper position to begin one of the tests, had problems with his balance and coordination, and failed to complete one of the tests. These facts, coupled with a positive result for alcohol consumption on the preliminary breath test, permitted an objectively reasonable police officer to conclude there was "a probability or substantial chance" that appellant had been driving under the influence of alcohol. *Wesby*, 583 U.S. at 57 (quoting *Gates*, 462 U.S. at 243 n.13); *see also Wohlford v. Commonwealth*, 3 Va. App. 467, 472 (1986)

(holding that, taken together, a "moderate smell of alcohol, the manner in which the vehicle was operated, and the admission of consumption of alcohol provided probable cause for the arrest").

Appellant argues that some of the indicia of alcohol, like glassy eyes or the odor of an alcoholic beverage, could have been attributable to other factors at the scene. But, as noted supra, a reasonable officer need not resolve every doubt about a suspect's guilt before establishing probable cause. *Joyce*, 56 Va. App. at 660. Here, the totality of the circumstances of the collision, appellant's contradictory statements about alcohol consumption, his poor performance on the field sobriety tests, and the positive preliminary breath test result were sufficient to establish probable cause to arrest for suspicion of driving under the influence of alcohol.[4]

### B. Retrograde Extrapolation Test

Appellant next argues that the trial court erred when it considered Dr. Wright's retrograde extrapolation testimony in convicting him. Appellant contends that he was indicted for driving under the influence of alcohol in violation of subsection (ii) rather than subsection (i) of Code § 18.2-266, and thus by relying on Wright's testimony relevant to subsection (i), the court "acted

---

[4] Appellant also contends that Boyette lacked reasonable articulable suspicion to continue to detain him after their initial encounter and before Boyette detected an odor of alcohol, noted appellant's "glassy" eyes, asked appellant again about alcohol consumption, and conducted field sobriety tests. But appellant's only argument to the trial court challenged probable cause to arrest based on the preliminary breath test result and appellant's performance on the field sobriety tests. Appellant did not present to the trial court the argument he now presents to this Court with respect to reasonable articulable suspicion to detain him. Accordingly, this argument is waived. *See* Rule 5A:18 (requiring a contemporaneous objection in the trial court to preserve an argument or issue for appellate review); *Mollenhauer v. Commonwealth*, 73 Va. App. 318, 329 (2021) ("Pursuant to the contemporaneous objection requirement of Rule 5A:18, this Court will not consider an argument on appeal that was not presented to the trial court."); *Moison v. Commonwealth*, No. 220536, slip op. at 4 (Va. Oct. 19, 2023) (order) (same). Additionally, "[a]lthough there are exceptions to Rule 5A:18" for good cause and to attain the ends of justice, appellant has not invoked them "and the Court will not apply the exceptions sua sponte." *Burford v. Commonwealth*, 78 Va. App. 170, 184 (2023).

not only as trier of fact, but as a prosecutor in amending the Commonwealth's theory of the case to support the conviction." We disagree.

Code § 18.2-266 provides, in pertinent part, that it is unlawful for "any person to drive or operate any motor vehicle . . . (i) while such person has a blood alcohol concentration of 0.08 percent or more by weight by volume or 0.08 grams or more per 210 liters of breath as indicated by a chemical test . . . , [or] (ii) while such person is under the influence of alcohol." Here, the pertinent language of appellant's indictment for violating Code § 18.2-266 reflects that he was accused of violating subsection (ii) of the statute, alleging that appellant "did unlawfully drive or operate a motor vehicle while under the influence of alcohol."

Contrary to the implication of appellant's argument, however, the trial court did not convict appellant for violating subsection (i) rather than subsection (ii) of Code § 18.2-266. This is clear from the language of the court's conviction ruling, for two reasons. First, in its ruling, the court made no factual finding about appellant's BAC at the time of the collision, which would have been required to convict under Code § 18.2-266(i). Second, the court made clear that it afforded appellant the benefit of the rebuttable presumption against intoxication provided by Code § 18.2-269(A)(1), and "[t]he presumptions contained in Code § 18.2-269 are not applicable" when contemplating conviction under Code § 18.2-266(i). *Davis v. Commonwealth*, 8 Va. App. 291, 298 (1989); *see also id.* (noting that "the inquiry under Code § 18.2-266(i) is not whether a driver was in fact 'under the influence of alcohol' to a degree that his ability to drive safely was affected," but "whether *at the time he was driving* his blood alcohol concentration" was within the numerical range specified by the subsection). Additionally, we note that it is not impermissible for a trial court to consider retrograde extrapolation testimony in a prosecution alleging a violation of Code § 18.2-266(ii). *See, e.g.*, *Hogle v. Commonwealth*, 75 Va. App. 743, 754-55 (2022) (affirming conviction under Code § 18.2-266 for "operating [a] vehicle while

- 8 -

under the influence of alcohol or a combination of alcohol and drugs" where the trial court considered, as part of the totality of the evidence, a forensic toxicologist's retrograde extrapolation of BAC).[5]

## C. Sufficiency of the Evidence[6]

Appellant also challenges the sufficiency of the evidence to sustain his conviction for driving while under the influence of alcohol. "When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). This Court "does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a

---

[5] Appellant also contends, under this assignment of error, that the trial court erred in relying upon the retrograde extrapolation test "preliminarily" in "denying [his] Motion to Strike." But appellant's second assignment of error alleges only that the court erred "in relying on the [test] results . . . to support its finding that insufficient [sic] evidence existed to warrant a conviction for DUI." Thus, appellant's second assignment of error encompasses only the court's conviction ruling, and is silent respecting appellant's motion to strike.

As our Supreme Court has recently emphasized, "[a]n assignment of error is not a mere procedural hurdle an appellant must clear in order to proceed with the merits of an appeal. Assignments of error are the *core* of the appeal. With the assignment of error, an appellant should 'lay his finger' on the alleged misjudgment of the court below." *Stoltz v. Commonwealth*, 297 Va. 529, 534 (2019) (alteration in original) (citation omitted) (quoting *Forest Lakes Cmty. Ass'n v. United Land Corp. of Am.*, 293 Va. 113, 122-23 (2017)). "Like a well-crafted pleading, assignments of error set analytical boundaries for the arguments on appeal, [and] provide a contextual backdrop for our ultimate ruling." *Forest Lakes*, 293 Va. at 123 (citation omitted) (quoting *Puckett v. Commonwealth*, 134 Va. 574, 579 (1922)); *see also Moison*, slip op. at 4 (noting that the language of an assignment of error "cabins the error that th[e] Court can consider"). It follows that "we do not consider issues touched upon by the appellant's argument but not encompassed by his assignment of error." *Banks v. Commonwealth*, 67 Va. App. 273, 290 (2017). *See also* Rule 5A:20(c) (requiring an appellant's brief to contain assignments of error that list "the *specific errors* in the rulings below . . . upon which the party intends to rely" (emphasis added)). Accordingly, appellant has waived his motion to strike argument under this assignment of error.

[6] Our analysis here addresses appellant's third and fourth assignments of error, which respectively allege that the trial court erred in denying appellant's motion to strike and that the totality of the evidence was insufficient to support his conviction for driving under the influence of alcohol.

reasonable doubt.'" *Id.* (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "'Rather, the relevant question is,' upon review of the evidence in the light most favorable to the prosecution, 'whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Pijor*, 294 Va. at 512).

As noted supra, Code § 18.2-266(ii) provides that it is unlawful for a person to drive or operate any motor vehicle while that person is under the influence of alcohol. "[T]he thrust of the statutory scheme is to prohibit drinking and driving where the driver's ability is impaired to operate safely a motor vehicle." *Hogle*, 75 Va. App. at 753 (alteration in original) (quoting *Thurston v. City of Lynchburg*, 15 Va. App. 475, 483 (1992)). The requisite "degree of intoxication, or being 'under the influence of alcohol,' is established when any person has consumed enough alcoholic beverages to 'so affect his manner, disposition, speech, muscular movement, general appearance or behavior, as to be apparent to observation.'" *Id.* at 753-54 (quoting *Thurston*, 15 Va. App. at 483). "In determining whether a defendant was under the influence, a factfinder considers 'all of the evidence of his condition at the time of the alleged offense.'" *Id.* at 754 (quoting *Leake v. Commonwealth*, 27 Va. App. 101, 109 (1998)). Additionally, "[t]his Court has found that '[a] defendant's admission that he consumed several alcoholic beverages, together with the testimony of the arresting officer regarding the defendant's appearance and lack of coordination, is sufficient to support a conviction for driving under the influence of alcohol.'" *Id.* (second alteration in original) (quoting *Lemond v. Commonwealth*, 19 Va. App. 687, 694 (1995)).

Here, viewed in the light most favorable to the Commonwealth, the evidence at trial demonstrated that appellant caused a three-car collision when he failed to successfully execute a left-hand turn through an intersection. During his investigation of the collision, Trooper Boyette noticed an odor of an alcoholic beverage coming from appellant and that appellant had "glassy"

eyes. Appellant admitted he had consumed nine ounces of alcohol about three hours before the collision and then submitted to field sobriety tests. He struggled to correctly place his feet to begin the walk-and-turn test, and also swayed and repeatedly lost his balance during that test. Attempting the one-legged-stand test, appellant lost his balance after a few seconds and failed to complete the test. Appellant consented to a preliminary breath test, which indicated he had been consuming alcohol, and later returned an Intoxilyzer result of 0.05 grams per 210 liters of breath. Additionally, a forensic toxicologist provided expert testimony on a retrograde extrapolation of appellant's BAC at the time of the collision. That extrapolation also indicated that appellant had been consuming alcohol prior to his collision and that the amount he had consumed had been in excess of what he reported to Boyette.[7] From the totality of these circumstances, a rational trier of fact could conclude beyond a reasonable doubt that at the time appellant was driving and caused a collision, alcohol so affected him as to impair his "ability . . . to operate safely a motor vehicle." *Hogle*, 75 Va. App. at 753 (quoting *Thurston*, 15 Va. App. at 483). Accordingly, the trial court did not err in denying appellant's motion to strike and convicting him of driving under the influence of alcohol, in violation of Code § 18.2-266.

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

*Affirmed.*

---

[7] To the extent appellant challenges the credibility or reliability of Wright's conclusions because she failed to state her degree of certainty, "[t]he term 'to a reasonable . . . certainty' has no precise meaning under Virginia law," and "[w]e have not imposed the formal requirement that . . . [an] expert proffer an opinion that includes the talismanic words 'reasonable . . . certainty.'" *Westmoreland Coal Co. v. Campbell*, 7 Va. App. 217, 223-24 (1988).