COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judge Beales and Senior Judge Humphreys
Argued by teleconference


COMMONWEALTH OF VIRGINIA
                                                MEMORANDUM OPINION* BY
v.       Record No. 0474-25-2                CHIEF JUDGE MARLA GRAFF DECKER
                                                    AUGUST 19, 2025
DOMINIC TEACH, S/K/A
  DOMINIC LAVAL TEACH


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Claire G. Cardwell, Judge

Andrew T. Hull, Assistant Attorney General (Jason S. Miyares,
Attorney General, on briefs), for appellant.

Kelsey Bulger, Deputy Appellate Counsel (Virginia Indigent
Defense Commission, on brief), for appellee.


Dominic Teach stands indicted for third-offense possession of cocaine, heroin, and

fentanyl with intent to distribute, as well as three related offenses involving possession of a

firearm and one for possession of a firearm after conviction of a violent felony. *See* Code

§§ 18.2-248(C), -308.2(A), -308.4(C). Teach filed a pretrial motion to suppress evidence that he

argued was obtained as the result of two unlawful searches. After a hearing, the circuit court

granted the motion and suppressed the evidence. Pursuant to Code §§ 19.2-398 and -400, the

Commonwealth appeals that ruling. The Commonwealth argues that the searches did not violate

the Fourth Amendment to the United States Constitution because, although the police did not

have an arrest warrant, they had probable cause to believe Teach possessed cocaine. For the

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

following reasons, we reverse the ruling of the circuit court excluding the evidence and remand the case for further proceedings consistent with this opinion.

BACKGROUND[1]

On May 2, 2024, around 1:00 a.m., Officer Luis Montano of the City of Richmond Police Department received a call for service indicating that three men were trying to break into vehicles in the parking lot of an apartment complex in what Montano explained was a high crime area.[2] The "suspect [car]" was described as a white sedan. Montano arrived at the parking lot and saw Teach sitting alone in the driver's seat of a white sedan. The car was parked, and the engine was not running. Montano saw no one else around.

As Montano surveyed the parking lot, Teach got out of the car and locked it. Officer Montano asked if he had seen anyone looking into cars in the parking lot, and Teach replied that he had not. Teach walked away and entered a nearby apartment using a key. Officer Montano twice briefly looked into the car with his flashlight. He saw a fanny pack on the floor by the driver's seat but noticed nothing else in the car.

While Montano was looking into the car the second time, he received another call for service and left the parking lot. When he returned to the lot about an hour later, he again looked

---

[1] On review of a ruling on a motion to suppress, the appellate court "consider[s] the facts in the light most favorable to . . . the prevailing party" below, in this case Teach. *Jones v. Commonwealth*, 279 Va. 521, 527-28 (2010) (quoting *Malbrough v. Commonwealth*, 275 Va. 163, 168 (2008)). "We are bound by the [circuit] court's factual findings unless those findings are plainly wrong or unsupported by the evidence." *Id.* at 528 (quoting *Malbrough*, 275 Va. at 168). To the extent that the circuit court did not make express findings of fact, this Court views the evidence and the inferences deducible from it in the light most favorable to the defendant since he prevailed below. *See Satchell v. Commonwealth*, 20 Va. App. 641, 648 (1995) (en banc); *Watts v. Commonwealth*, 57 Va. App. 217, 226 (2010).

[2] Montano testified that during his three years as an officer with the Richmond Police Department, he received calls for service at that apartment complex on "pretty much every shift" and that the calls included "drug complaints."

through the car's windows and saw the fanny pack in the same position.[3] At that time, Officer Montano also saw a clear plastic baggie with a "white substance" lying on the floorboard next to the driver's door. Based on his training and experience, the officer believed the white substance was cocaine. Montano asked Officer Miguel Reyes, also of the Richmond Police Department, to look in the car. When Reyes did so and saw the white substance, he believed, based on his training and experience, that it was crack.[4]

Teach returned to the parking lot and asked Officer Montano, in a way the circuit court characterized as "very protective of . . . and very defensive about the car," why the officers were trying to look inside it. Teach confirmed that Montano had seen him sitting in the car earlier. As the officers asked to speak further with Teach about the car and walked toward him, he started to walk away. Officers Montano and Reyes "t[ook] him to the ground" and handcuffed him. When Montano told Teach he had seen drugs in the car, Teach said neither the car nor "[any] of that shit [wa]s [his]." Montano then retrieved the car key from Teach's jacket pocket and unlocked the car. He seized the bag of suspected cocaine from the vehicle and also searched the fanny pack. Teach was arrested "on-scene." He said that the car did not belong to him, and a records check confirmed that he was not the registered owner.

The Commonwealth charged Teach with three drug and four firearm offenses. In his pretrial motion to suppress, Teach argued that the search of his person and seizure of the car key violated his Fourth Amendment rights. He suggested that the contraband discovered during the ensuing search of the car similarly violated his Fourth Amendment rights and should be

---

[3] The circuit court found that Officer Montano noticed the fanny pack was in a different position when he looked into the car the third time. But this finding is not supported by the record, as Officer Montano confirmed that "the bag" was "in the same position" as before.

[4] Defense counsel argued at the suppression hearing that cocaine and crack, although "they look similar," are "different substances." The circuit court replied by positing, "Can't cocaine just be a more general description of something?"

suppressed. The Commonwealth argued that probable cause supported Teach's arrest and the seizure of the car key, and the automobile exception to the search warrant requirement permitted the seizure of the suspected cocaine.

The circuit court held that the officers violated Teach's Fourth Amendment rights by searching him without a warrant because they did not have probable cause to believe he possessed the suspected contraband seen in the car. The court also concluded that Officer Montano did not have probable cause to arrest Teach. Finally, the court held that because its ruling was based on the illegal search of Teach's person, the Commonwealth's challenge to Teach's standing to contest the search of the vehicle was moot. Based on these conclusions, the circuit court applied the exclusionary rule and granted the motion to suppress.

ANALYSIS

The Commonwealth contends that the circuit court erred by granting Teach's motion to suppress. On appeal of a ruling granting a defendant's motion to suppress, the Commonwealth has the burden to show that the circuit court's ruling constituted reversible error. *See Sample v. Commonwealth*, 303 Va. 2, 10 (2024); *Commonwealth v. Benjamin*, 28 Va. App. 548, 552-54 (1998). A Fourth Amendment challenge presents a mixed question of law and fact, and the appellate court reviews "the [circuit] court's application of the law de novo." *Hicks v. Commonwealth*, 281 Va. 353, 359 (2011) (quoting *Whitehead v. Commonwealth*, 278 Va. 300, 307 (2009)); *see Baskerville v. Commonwealth*, 76 Va. App. 673, 684 (2023). Although a reviewing court "give[s] deference to the factual findings of the circuit court," both explicit and implicit, "we independently determine whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment." *Curley v. Commonwealth*, 295 Va. 616, 621 (2018) (quoting *Jones v. Commonwealth*, 277 Va. 171, 177 (2009)); *see Watts v. Commonwealth*, 57 Va. App. 217, 226 (2010). This independent de novo examination includes

our review of whether the facts found by the circuit court established probable cause for a search or seizure.  *See Curley*, 295 Va. at 621; *Bland v. Commonwealth*, 65 Va. App. 405, 412 (2016).

It is well recognized that "[t]he Fourth Amendment prohibits unreasonable searches and seizures."  *Collins v. Commonwealth*, 297 Va. 207, 212 (2019).  And "[w]arrantless searches and seizures . . . are presumptively unreasonable."  *Bryant v. Commonwealth*, 72 Va. App. 179, 187-88 (2020) (second alteration in original) (quoting *Glenn v. Commonwealth*, 275 Va. 123, 130 (2008)).  As a result, in the circuit court, "the Commonwealth ha[d] the burden of proving the legitimacy of [the] warrantless search and seizure."  *Myers v. Commonwealth*, 83 Va. App. 656, 664 (2025) (quoting *Whitfield v. Commonwealth*, 265 Va. 358, 361 (2003)).

Here, the circuit court held that the officers did not have probable cause to believe that Teach possessed the suspected contraband in the car and, as a result, could not search his person. That ruling forms the fundamental basis for this appeal.

The Commonwealth argues that the police had probable cause to arrest Teach.  It reasons that once the officers developed probable cause for the arrest, Officer Montano could constitutionally search Teach incident to arrest and seize the car key.  The Commonwealth suggests that this search was lawful regardless of whether Montano had actually made an arrest or had the subjective intent to do so, as long the search was roughly contemporaneous with the lawful arrest.

## I. Teach's Procedural Bar Argument

As an initial matter, we address Teach's argument that this appeal is not properly before the Court.  The Commonwealth's assignment of error challenges only the circuit court's ruling that the police did not have probable cause to arrest Teach.  It does not contest the circuit court's conclusion that he was being detained and was not actually under arrest when Officer Montano searched him.[5]

---

[5] The Commonwealth's assignment of error provides as follows: "As there was probable cause to arrest Teach, the circuit court erred in granting the motion to suppress." *See generally* Rule 5A:20(c)(1) ("Only assignments of error listed in the brief will be noticed by this Court.").

Teach believes that the Commonwealth's failure to challenge the finding that he was merely detained, not arrested, when Montano searched him is fatal to the Commonwealth's appeal.

Generally speaking, "[t]he distinction between a formal arrest and mere probable cause to arrest makes a difference under the Fourth Amendment." *Parady v. Commonwealth*, 78 Va. App. 18, 34 (2023). In ordinary circumstances, "[i]t is the fact of the lawful arrest" of an individual that "establishes the authority to search" him incident to that arrest. *Id.* at 35 (alteration in original) (quoting *United States v. Robinson*, 414 U.S. 218, 235 (1973)). In other words, it is usually irrelevant whether a police officer had probable cause to arrest a suspect if he did not actually do so. *See id.* at 34-35. But the law recognizes an exception to this principle. That exception provides that a search considered incident to arrest can occur before the arrest as "long as the search 'is substantially contemporaneous with the arrest and confined to the immediate vicinity of the arrest.'" *Id.* at 32 (quoting *Stoner v. California*, 376 U.S. 483, 486 (1964)). For the exception to apply, the police must, of course, have probable cause to arrest in the first place, based on evidence independent of the search, viewed objectively. *See Perry v. Commonwealth*, 280 Va. 572, 582 (2010); *Slayton v. Commonwealth*, 41 Va. App. 101, 108 n.1, 109 (2003).

In this case, although the circuit court held that Teach was not under formal arrest when Officer Montano searched him, he was arrested at the scene following the search. *See Parady*, 78 Va. App. at 32. As a result, the scope of the Commonwealth's assignment of error challenging the finding that probable cause did not support the search of Teach's person is sufficient for this Court to address, on the merits, not only that question but also the related question of whether the search was valid as a search incident to arrest. So we turn to the merits of the probable-cause and search-incident-to-arrest issues.

## II. Probable Cause

"[A]n officer 'has probable cause to arrest . . . without a warrant' if that officer 'has reason to believe that a person is committing a felony in his presence by possessing contraband or a controlled substance.'" *Id.* at 33 (second alteration in original) (quoting *Purdie v. Commonwealth*, 36 Va. App. 178, 186 (2001)). And probable cause "is a 'flexible, common-sense standard.'" *Keene v. Commonwealth*, 74 Va. App. 547, 555 (2022) (quoting *Slayton*, 41 Va. App. at 106). "[U]nlike a factfinder at trial, 'reasonable [police] officers need not ["]resolve every doubt . . . before probable cause is established.["]'" *Doscoli v. Commonwealth*, 66 Va. App. 419, 427 (2016) (quoting *Joyce v. Commonwealth*, 56 Va. App. 646, 660 (2010)). "It 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (quoting *Illinois v. Gates*, 462 U.S. 213, 244 n.13 (1983)).

In determining whether probable cause exists, courts look to the totality of the circumstances. *Gates*, 462 U.S. at 238. And these circumstances are viewed objectively rather than subjectively. *Durham v. Commonwealth*, ___ Va. ___, ___ (Aug. 1, 2024). Although providing an objective standard, the totality-of-the-circumstances test allows officers to draw on their "training, experience, and everyday common sense." *Id.* at ___; *see Curley*, 295 Va. at 622. Fundamentally, probable cause involves a much lower evidentiary standard than proof beyond a reasonable doubt. *E.g.*, *Maryland v. Pringle*, 540 U.S. 366, 371 (2003); *see Doscoli*, 66 Va. App. at 427. The standard is "less demanding than a preponderance of the evidence standard[] and . . . [therefore] does not require that an officer believe that the search's subject is more likely guilty than innocent." *Durham*, ___ Va. at ___.

The first question in the instant case is whether probable cause supported the officers' conclusion that the white substance they saw in the car in the high crime area was an illegal drug.

*See generally Whitaker v. Commonwealth*, 279 Va. 268, 275-76 (2010) (recognizing that the fact that an event occurred in a "high crime area" is relevant in evaluating whether the totality of the circumstances supported a seizure). "Observation of [suspected] contraband . . . openly exposed to view inside a vehicle is not a constitutionally proscribed search." *Hollis v. Commonwealth*, 216 Va. 874, 876 (1976); *see Hamlin v. Commonwealth*, 33 Va. App. 494, 503 (2000) (holding that probable cause existed after a passenger in a vehicle brought a bag of white powder into the officer's view), *aff'd on reh'g en banc*, 35 Va. App. 375 (2001) (per curiam). Officer Montano looked through the car window and saw a clear plastic baggie with a white substance inside on the floor next to the driver's door, and he pointed the substance out to Officer Reyes. Based on their training and experience, the two officers believed the substance was cocaine, and the circuit court credited Officer Montano's testimony to that effect.[6] The observation of the substance provided the officers with probable cause to believe that the bag contained contraband. *See McCary v. Commonwealth*, 36 Va. App. 27, 32-33, 39 (2001) (upholding the plain-view seizure of bags of cocaine found on a hotel room floor); *see also State v. Jackson*, 778 So. 2d 23, 27-29 (La. Ct. App. 2000) (upholding the search of a car during a traffic stop after an officer saw a "zip-lock bag containing white powder in plain view[] on the floor of the car between the seat and the door," which he believed, "based on his past experience in narcotics cases," was cocaine); *State v. Flores*, 996 A.2d 156, 158, 163-64 (R.I. 2010) (upholding the plain-view seizure of two clear plastic bags containing a "white substance" that the officer, based on his training and experience, believed was cocaine and noting "ample support" for this holding from other jurisdictions).

---

[6] Montano testified that he thought the substance was cocaine. Reyes testified that they both believed it was crack. When defense counsel argued that the testimony of the two officers was inconsistent, the circuit court noted that the word "cocaine" could "just be a more general description" of the same thing. Regardless of whether any inconsistency existed, the court's letter opinion reflects its acceptance of Montano's testimony that he believed, based on his training and experience, that the substance was cocaine.

Teach cites *Harris v. Commonwealth*, 241 Va. 146 (1991), in support of the proposition that the white substance did not give rise to probable cause because it could have been something innocuous. In *Harris*, the Supreme Court of Virginia held that an officer who found a film canister during a weapons frisk did not have probable cause to conclude it contained drugs because "law-abiding citizens, on a daily basis, also use film canisters" for "legitimate" purposes. *Id.* at 154-55; *see also Cost v. Commonwealth*, 275 Va. 246, 249, 253 (2008) (reaching the same conclusion about capsules detected by "plain feel" because they could have contained "legal medication dispensed in capsule form").

Our Supreme Court has "consistently declined to find that probable cause can be established solely on the observation of material [that] can be used for legitimate purposes, even though the experience of an officer indicates that such material is often used for illegitimate purposes." *Grandison v. Commonwealth*, 274 Va. 316, 319, 321 (2007) (quoting *Brown v. Commonwealth*, 270 Va. 414, 420-21 (2005)) (declining to find probable cause based on a dollar bill in an "apothecary fold"); *see also Cauls v. Commonwealth*, 55 Va. App. 90, 101-02 (2009) (holding that observation of "the knotted and frayed end of a plastic bagg[ie] protruding from [a] pocket," without a view of the bag's contents, did not provide probable cause). But a key distinction is that, in the *Harris* line of cases, only a container was seen or felt. Although each container could be considered suspicious (film canister, capsule, uniquely folded currency, knotted-and-frayed plastic baggie), each one also had a plainly legitimate purpose. And most importantly, the contents of each container, if any, were unknown because the container was opaque, positioned in a way that obscured any contents, or entirely hidden from view. Here, by contrast, Officer Montano saw the suspected illicit substance itself. The officer testified, based on his training and experience, that he believed the white substance was cocaine. Even though he

could not be certain at that stage that the substance was in fact illegal, the test for probable cause falls far short of certainty. *See Durham*, ___ Va. at ___; *Doscoli*, 66 Va. App. at 427.[7]

On this record, Officer Montano had probable cause to believe not only that the white substance was contraband but also that it was in Teach's constructive possession. Just an hour before Montano noticed the baggie, he saw Teach sitting alone in the driver's seat of the car, directly above where Montano later saw the bag of cocaine. It was about 1:00 a.m., and no one else was around. Teach locked the car when he got out of it. The circuit court expressly found that an hour later, when Teach asked Officer Montano why he was looking into the car, Teach was "very protective of" and "defensive about the car." *See Young v. Commonwealth*, 275 Va. 587, 591 (2008) (observing that a defendant's knowledge of the nature and character of a controlled substance "may be shown by evidence of [his] acts, statements[,] or conduct"). These circumstances adequately connected Teach to both the car and the cocaine in the clear plastic bag on the driver's floorboard for purposes of probable cause to arrest. *Cf. Pringle*, 540 U.S. at 368, 371-72 (upholding the arrest of a car's front-seat passenger, along with the driver and back-seat passenger, when police found a roll of $763 in the glove compartment and glassine baggies of cocaine behind the back-seat arm rest). The possibility that someone else might have accessed the locked car during the interim, between contacts with the police, did not defeat the conclusion that the officers had probable cause with regard to Teach. *See Dodd v. Commonwealth*, 50 Va. App. 301, 307-08 (2007) (recognizing that possession of drugs may be constructive joint possession of any duration and that although presence in a car containing contraband does not create a presumption of possession, it is an appropriate factor in assessing probable cause). So

_____

[7] Law-abiding citizens certainly use plastic baggies to carry innocent items, potentially including white powdery substances such as flour, sugar, and baby powder. But no other items near the white substance hinted at an innocuous nature, such as pantry items or a diaper bag. And such individuals would be unlikely to place such legitimate items beneath their legs on the floorboard of a car's driver's seat.

- 10 -

Officer Montano's knowledge of facts establishing objective probable cause supported Teach's arrest, even though Teach was merely detained, not arrested, at that time. *See Slayton*, 41 Va. App. at 109 (explaining that whether a police officer "ha[s] the state of mind . . . [that] provide[s] the legal justification for the officer's action does not [matter] as long as the circumstances, viewed objectively, justify that action" (quoting *Whren v. United States*, 517 U.S. 806, 813 (1996))).

The circuit court, in granting the motion to suppress, held that "the totality of the circumstances did not reasonably indicate the existence of probable cause to believe that [Teach] possessed the suspected contraband in the vehicle." It based this conclusion largely on the time that elapsed between when Officer Montano first saw Teach in the car (but did not see any cocaine) and when Montano looked in the car again an hour later and saw the bag of suspected cocaine on the floor. The court implied, based on the evidence, that *someone* accessed the car during the hour in which it was unobserved by law enforcement but that nothing suggested Teach was that person.[8]

We disagree and instead conclude, as a matter of law, that the totality of the circumstances established probable cause that Teach possessed the cocaine in the car. Not only was he seen sitting directly above the floorboard on which the baggie of cocaine was later found, but he also locked the car when he got out, an act that significantly restricted the access of others to the car's interior. Although it remains possible that someone else accessed the car and placed the drugs in plain view on the floorboard before Montano returned, the probable cause standard

---

[8] As explained, *see supra* note 3, the circuit court appears to have relied in part on the erroneous factual finding that Officer Montano noticed the fanny pack was in a different position when he looked into the car the second time. That finding is unsupported by the record, as Officer Montano confirmed that "the bag" was "in the same position" both times. Consequently, this is not a fact that supports the circuit court's ruling that the totality of the circumstances failed to establish probable cause for an arrest.

"is certainly less demanding than [the] preponderance of the evidence standard." *See Durham*, ___ Va. at ___. And "[o]ur cases recognize that drugs are a commodity of significant value, unlikely to be . . . carelessly left [behind]." *Ward v. Commonwealth*, 47 Va. App. 733, 753 n.4 (2006), *aff'd*, 273 Va. 211 (2007). They can also be possessed jointly with another. *See Dodd*, 50 Va. App. at 307.

As a result, we hold as a matter of law that the Commonwealth met its burden to show that probable cause supported an arrest. This conclusion, however, does not end the inquiry. Next, we must analyze whether seizing the car key from Teach qualified as part of a lawful search incident to arrest.

### III. Applicability of Search-Incident-to-Arrest Doctrine

A law enforcement officer who has probable cause to arrest "may search after—or even before—[the] arrest [without violating the Fourth Amendment] so long as" two additional conditions are met. *See Parady*, 78 Va. App. at 32. A search incident to arrest must meet proximity and time requirements. *See id.* The Commonwealth bore the burden of proof below on both of these prongs because the search of Teach's person was conducted without a warrant. *See Myers*, 83 Va. App. at 664.

Under the proximity requirement, the search must be "confined to the immediate vicinity of the arrest." *Parady*, 78 Va. App. at 32 (quoting *Stoner*, 376 U.S. at 486). Here, the search at issue was of the pocket of the jacket Teach was wearing. It is undisputed that this location was within "the immediate vicinity of the arrest." *See id.* (recognizing authority to search the arrestee's person); *see also Perry*, 280 Va. at 582 (approving a pat-down search).

With regard to the time requirement, "the search '[must be] substantially contemporaneous with the arrest.'" *Parady*, 78 Va. App. at 32 (quoting *Stoner*, 376 U.S. at 486). Put differently, "the formal arrest" must "follow[] quickly on the heels of the challenged search of [the] person." *Parker*

- 12 -

*v. Commonwealth*, 255 Va. 96, 105 (1998) (quoting *Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980)). This Court has noted the absence of a "'bright line' rule on how m[uch time] may pass between search and arrest for the arrest to still be 'contemporaneous.'" *Parady*, 78 Va. App. at 33. We have held only that a period of two months between a search and subsequent arrest is not "contemporaneous." *Id.*[9] The parties have cited no case law as controlling on the outer limits of the delay authorized by this principle. *See generally* 3 Wayne R. LaFave, *Search and Seizure* § 5.4(a) n.11 (6th ed. 2020) ("Just how quickly [the arrest must be conducted after the search] . . . is sometimes a matter of dispute."). We therefore analyze the period of delay under the Fourth Amendment's "touchstone" standard of reasonableness, a question of law reviewed de novo on appeal. *See Durham*, ___ Va. at ___.

The circuit court found that Teach was not under arrest at the time of the search, and that finding was not challenged by the Commonwealth in this pretrial appeal. *See generally Parady*, 78 Va. App. at 33-34 ("[A]n officer's internal calculation that there is probable cause to arrest is not an actual arrest."). Even so, the record reflects that Officer Montano arrested Teach "on-scene," although he opted to "get everything out of the car first." These facts establish that the search and subsequent arrest were substantially contemporaneous, with the "arrest follow[ing] quickly on the heels of the . . . search." *See Parker*, 255 Va. at 105 (quoting *Rawlings*, 448 U.S. at 111); *see also Italiano v. Commonwealth*, 214 Va. 334, 337 (1973) (per curiam) (upholding a search preceding arrest because the two actions were "for all practical purposes but one transaction" and any other outcome would "allow a technical formality of time to control [despite] no real interference with the [defendant's] substantive rights" (quoting *Holt v. Simpson*, 340 F.2d 853, 856 (7th Cir. 1965))). *See generally United States v. Davis*, 94 F.4th 310, 318 (4th Cir. 2024) (upholding a search as

___

[9] In dicta, *Parady* refers to the permissible delay in terms of "minutes" but acknowledges "[t]here is no 'bright line' rule." 78 Va. App. at 33 (citing *United States v. Torres-Castro*, 470 F.3d 992, 998 (10th Cir. 2006)).

substantially contemporaneous with the later arrest "[even ]though the record d[id] not describe exactly when [the defendant] was formally placed under arrest"); *United States v. Lewis*, 147 A.3d 236, 240 (D.C. 2016) (en banc) (recognizing that allowing a search to precede arrest may "benefit innocent suspects" if the outcome "negate[s] probable cause or persuade[s] the officer not to arrest").

For these reasons, Montano's search of Teach's person and seizure of the car key was valid under the search-incident-to-arrest doctrine even though he arrested Teach on the scene after searching him rather than beforehand.

## IV.  Seizure of the Suspected Cocaine

The remainder of our analysis is straightforward.  The search of Teach's person and seizure of the car key were constitutionally permissible.  As a result, the officers had lawful access to the car permitting them to seize the bag of suspected cocaine that was in plain view.  *See Daniels v. Commonwealth*, 69 Va. App. 422, 435 (2018) (setting out the elements of the "plain view" exception to the warrant requirement); *Durham*, ___ Va. at ___ (explaining that the automobile exception permits police to search a car without a warrant if they have probable cause to believe it contains contraband).  While doing so, the officers were also authorized to seize any other contraband in the car.  *See Durham*, ___ Va. at ___.  Accordingly, the exclusionary rule does not apply to the contraband obtained from the car.[10]

_____

[10] We do not address the Commonwealth's second assignment of error regarding whether "Teach had . . . standing to challenge the search of the vehicle" because merely assuming without deciding that he had standing presents the best and narrowest ground for decision. *Podracky v. Commonwealth*, 52 Va. App. 130, 134-35 (2008) (approving this approach where a constitutional challenge did not have merit).  We also do not consider the Commonwealth's third assignment of error, which addresses legal doctrines that could apply only if the seizure of the suspected cocaine and other items from the car was unconstitutional.  Absent a constitutional violation, neither the exclusionary rule nor any exceptions to its application are implicated. *See Jeffers v. Commonwealth*, 62 Va. App. 151, 160 n.2 (2013) (upholding the constitutionality of a search on the merits and declining to consider an alternative argument that even if the search was unconstitutional, exclusion was not a proper remedy).

CONCLUSION

Under the totality of the circumstances, viewed under the proper standard, law enforcement had probable cause to arrest Teach when they searched his person. Further, that search was permissible under the search-incident-to-arrest doctrine because the search and the arrest occurred substantially contemporaneously and in the immediate vicinity of one another. Consequently, the circuit court erred by applying the exclusionary rule and suppressing the evidence seized from the car.

*Reversed and remanded.*